No. 13882

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

_____

THE STATE OF MONTANA,

            Plaintiff and Respondent,

    vs.

DAVID OPPELT,

            Defendant and Appellant.

_____

Appeal from:  District Court of the Eighth Judicial District,
              Honorable H. William Coder, Judge presiding.


Counsel of Record:

    For Appellant:

        James A. Lewis, Public Defender argued, Great Falls,
        Montana

    For Respondent:

        Hon. Mike Greely,Attorney General, Helena, Montana
        J. Mayo Ashley, argued, Assistant Attorney General,
        Helena, Montana
        J. Fred Bourdeau, County Attorney, Great Falls,Montana.


_____

                          Submitted:  April 26, 1978
                           Decided:  JUN - 8 1978


Filed:  JUN  8 1978

*Thomas J. Kearney*
                      _____
                              Clerk.

Mr. Justice Gene B. Daly delivered the Opinion of the Court:

Defendant appeals from a judgment of conviction of aggravated burglary, aggravated assault, and attempted theft entered by the District Court, Cascade County, upon a jury verdict.

At approximately 7:30 a.m., January 15, 1977, the Cascade County sheriff's department notified Jerry Noble, owner and manager of Zooks Tire Center in Great Falls, Montana, that the burglar alarm for his store had sounded. Noble proceeded to his store where he observed a man exiting from the shop door. Noble then parked his car in a manner blocking an automobile which was parked near the building.

At approximately this same time, Leonard Dusek, a Zooks Tire Center salesman, arrived at work. As Dusek approached the door of the building, he observed a man inside the store crouching behind a counter, about eight to ten feet from where Dusek stood. The man rose from his crouching position, Dusek and the man stared at each other, and the man then fled into the shop. Dusek ran to the north side of the building and observed three people, two were entering an automobile approximately 15 to 20 feet from where Dusek was standing. Dusek testified the third person, defendant, was standing outside the vehicle and threw a bumper jack handle at him.

Noble parked his pickup truck at an angle blocking the intruders' vehicle. Dusek testified that defendant David Oppelt obtained a crescent wrench from the car and threw it at Noble's pickup truck, after which defendant entered the store and collected several tire irons which he threw at Noble's pickup truck. Noble testified he got a very good look at the fellow

throwing the tire irons, and that person was defendant.

When the two intruders in the vehicle tried to drive away, Noble rammed their car with his pickup truck, immobilizing their vehicle. The two people in the auto then ran into the shop, while the man who had thrown the tire irons, wrench and jack handle fled the scene.

Noble and Dusek entered the shop and, after an unsuccessful attempt by the intruders to escape, apprehended the two people who had been in the car and a third person who had been hiding in the store behind a tire rack. Noble kicked one of the intruders several times in an attempt to force him to reveal the name of the fourth conspirator who had escaped. The intruders, upon this persuasive prompting by Noble, identified the fourth participant in the crime as "Sonny" Gardipee.

The sheriff's department took the suspects into custody and elicited from one, Robert Azure, a list of four of his friends. Defendant was one of the people on the list. Within an hour and a half of the crime, Noble and Dusek went to the sheriff's office where they gave an account of the crime and a description of the man who had fled. Noble described the person as between 5'8"/ and 5'10", with hair to the shoulders and a slight build. Dusek described the person as tall and thin with long hair.

A deputy sheriff then held photos of defendant and one other person from Robert Azure's list of friends and showed the photos to Dusek and Noble. The two persons in the photos fit both Noble's and Dusek's description of the fourth conspirator. Both Noble and Dusek positively identified defendant as the fourth participant.

On January 19, 1977, the state filed an Information in District Court, Cascade County, charging defendant and the three participants apprehended at the scene of the crime with aggravated assault, aggravated burglary, attempted theft, and also with a count of criminal trespass to vehicles which was later dismissed. On March 28, 1977, the first day of trial and more than two months after they had first identified defendant from the photos, the county attorney showed Noble and Dusek three or four photos from which they both again selected the photo of defendant as the photo of the fourth participant in the crime.

At defendant's trial, both Dusek and Noble identified defendant as the fourth person involved in the crime. The state at trial raised the issue of legal accountability, and the court gave instructions placing the theory of legal accountability before the jury, although the legal accountability offense was not charged in the Information.

Defendant on appeal presents two issues for review:

1. Did Noble and Dusek's in-court identification of defendant result from an impermissibly suggestive pretrial photographic lineup?

2. Did the court err in allowing the state at trial to raise the issue of legal accountability, where that crime was not charged in the Information?

The factors to be considered to determine whether a pretrial showup, lineup, or photo identification is impermissibly suggestive have been set forth by the United States Supreme Court:

"* * * As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the

- 4 -

criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation * * *." Neil v. Biggers, (1972), 409 U.S. 188, 198, 199, 93 S.Ct. 375, 34 L ed 2d 401,411.

See also: Manson v. Brathwaite, (1977), 432 U.S. 98, 114,117, 97 S.Ct. 2243, 53 L ed 2d 140,155.

Applying these factors to this case, we cannot say the pretrial photographic identification was so suggestive as to create a substantial likelihood of misidentification.

The witnesses had a sufficient opportunity to view the person at the time of the crime. Noble saw the person throwing tire irons from a location very close to the pickup truck in which Noble was sitting. Dusek stared at the person for about five seconds while the person was inside the shop beneath a strong overhead light. Dusek again saw the person outside the shop throwing various auto tools.

The witnesses' attention was focused on defendant. Noble, when he was sitting in his pickup truck, testified that he was only 15 to 20 feet from the person and got a "very good" look at him. Dusek's attention was focused on the person as he stared at him when he observed him inside the store.

The witnesses' prior description of the person accurately described defendant, although it was not as detailed as it might have been. Both Noble and Dusek testified as to the person's build, height and hair length. Defendant matched the witnesses' descriptions.

The witnesses demonstrated a high level of certainty at the photographic lineup. Each testified that he had no doubt as to the identification; each quickly picked the photo of defendant as the photo of the criminal.

Finally, the length of time between the crime and the confrontation was short. Both witnesses identified defendant at the photographic lineup less than two hours after the crime was committed.

A claim of prejudice from an allegedly defective identification procedure must be evaluated by examining "the totality of the circumstances surrounding it." Stovall v. Denno, (1967), 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L ed 2d 1199, 1206. Defendant claims that several factors created a "totality of circumstances" which led to an impermissibly suggestive identification procedure.

Defendant first notes that identification was made from a presentation of only two photographs. Although showing numerous photos would have been a preferable procedure, it was not unduly suggestive in this case. The United States Supreme Court has held that identification of a criminal even by means of a one-person showup or photo presentation does not necessarily, without more, violate due process. Neil v. Biggers, supra; Stovall v. Denno, supra. In this case, the officer who conducted the photo identification stated the picture of defendant and the other man were the only two pictures he could obtain from the list of the four people Robert Azure had given him. Moreover, the photo identification occurred not after defendant had been taken into police custody, but during the course of the police investigation of the crime. This was merely a proper investigation procedure rather than an attempt to suggest to witnesses that a suspect in custody was the one in the photo and the one who committed the crime. See: United States v. Cantu, (7th Cir. 1972), 501 F.2d 1019, 1020; State v. Ware, (1976), 113 Ariz. 337, 554 P.2d 1264, 1266. While the use of a larger number of photos would surely have strengthened the force of the

- 6 -

identification evidence, the defect in using only two photos " * * * goes to weight and not to substance". Manson v. Brathwaite, supra.

Defendant also complains that Noble and Dusek were allowed to view the photos in the presence of each other, while the deputy sheriff held the photographs before them. Simultaneous, rather than independent exhibitions of photos to more than one witness will render a photographic identification inadmissible only if the circumstances of the identification procedure are such as to give rise to a substantial likelihood of misidentification. United States v. Hopkins, (D.C.Cir.1972), 464 F.2d 816, 820. Here, each witness testified that he identified defendant as the criminal immediately upon seeing the photos, without prompting from the other witness or from the police officer. In the absence of any evidence of suggestiveness, this identification procedure was merely a factor which the jury could consider in evaluating the strength of the evidence.

Defendant also claims that it was improper to conduct another photographic lineup prior to trial. In the absence of any evidence that the state coached the witnesses to pick defendant's picture, however, the reshowing of the photos was merely a matter on which the defense could question the witnesses during cross-examination. Buchanan v. State, (Alaska 1977), 561 P.2d 1197, 1207.

Finally defendant claims that the photographic identification was unfair because the police never attempted to obtain a photo of Sonny Gardipee, the man whom the other participants in the crime named as the criminal who had fled. At trial, however, the officer who conducted the photographic identification testified that he knew Sonny Gardipee to be a man 5'9" tall, with short hair, weighing 230 pounds. Both witnesses described the criminal as thin with shoulder length hair.

Considering the totality of the circumstances and applying the four part analysis of Neil v. Biggers, supra, we cannot say that the photographic identification was so suggestive as to create a substantial likelihood of misidentification. Short of this, any defects in the procedure were merely factors by which the jury could measure the weight of the identification testimony.

Nor did the court err in allowing the state to introduce the theory of legal accountability at trial when that theory was not listed in the Information. This Court recently held that Montana follows the Illinois rule that "* * * an indictment need not distinguish an act performed by the accused himself and the act of another for which he is legally accountable." State v. Murphy, (1977), _____Mont._____, 570 P.2d 1103, 1105, 34 St. Rep. 1174.

The judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 8 -