No. 80-117

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

WILLIAM S. DAHL,

Defendant and Appellant.

---

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, The Honorable
William J. Speare, Judge presiding.

Counsel of Record:

For Appellant:

Michael J. Whalen, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Harold Hanser, County Attorney, Missoula, Montana

---

Submitted on Briefs: July 11, 1980

Decided: NOV 2 5 1980

Filed:

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant William Dahl appeals from a judgment of the Yellowstone County District Court, entered following a jury trial, convicting him of robbery. He also appeals from the trial court's order designating him as a dangerous offender for purposes of parole eligibility. We affirm the conviction but remand for redetermination of status for parole eligibility.

Defendant raises three issues. He first challenges the order of the trial court refusing to suppress evidence relating to pretrial photographic line-up procedures. He next challenges the refusal of the trial court to instruct the jury that "mere presence at or about the scene where a crime is committed does not make one a party to the crime." Last, he contends that the trial court erred in concluding that section 46-18-404, MCA, required defendant to be classified as a dangerous offender for parole eligibility.

The robbery charge stems from a robbery of a Billings Superamerica gas station and convenience store on the evening of August 30, 1979. Two men entered the store, waited until all the customers were gone, and then approached the clerk, Robert Heimer, and demanded the money from the cash register. One of the men, later identified as the defendant, grabbed him by his shirt collar, pulled him to the counter, and putting a knife to his throat, told him to hurry up. While the clerk gathered the money, the man held him with a knife to the clerk's throat. The clerk placed the money in a sack and gave it to one of the men. The men also took a cash drawer and then fled.

The clerk immediately reported the robbery to the

-2-

police and gave them a description of the men--one of the descriptions fitting that of the defendant. Two witnesses saw the men flee the store and get into a car, and they relayed the car's description to the clerk who in turn gave the description to the police. A few minutes later, the police noticed a vehicle near the Superamerica store which matched the description given to them, and they gave chase.

They followed the vehicle for a short distance before the vehicle was driven into an alley and abandoned, the occupants fleeing on foot. The police gave chase on foot. Sometime later, another officer found the defendant hiding under a nearby car and arrested him. The cash drawer and money stolen from Superamerica were found near the abandoned car, and police also found nearby a paper bag similar to the ones used at Superamerica--bearing the defendant's fingerprint. Later that evening, while at the police station, one of the police officers identified defendant as being the driver of the car to which the officers gave chase.

The identification process began after the defendant was arrested. He was taken to the Superamerica station in the back seat of a police car. The store clerk could not then make a positive identification of the suspect, apparently due to poor lighting in the car and station area, and because defendant was slouched over and exposed only his profile. But the store clerk went down to the police station later on the same evening and gave a description of the man who threatened him with the knife, which description very closely matched defendant's actual appearance. He also stated to the police while giving the description, that he was fairly certain that the man brought to the Superamerica station earlier that night had been one of the robbers.

The next identification process took place some eight days after the robbery, after the defendant had been in custody, and after counsel had been appointed. The store clerk came to the police station to look at a photographic line-up for purposes of identification. The police showed him six photographs of persons resembling the description of the man he had previously given to the police, and the clerk immediately identified the defendant as that man. Defendant was in custody at the time but was not present for this photographic line-up. Defendant's counsel was not present. Defendant moved to suppress the photographic identification and thus prevent the robbery victim from testifying in court that he had identified defendant through a photographic line-up presented to him by the police.

Both the robbery victim and the police officer who arranged the photographic line-up, testified that the photographs showed both a full face view and a profile view of the subjects involved. The police officer testified, however, that he also possessed a Polaroid picture of the defendant showing only a face view. He agreed that it was possible that the robbery victim had seen the Polaroid picture before he made the identification from the photographic line-up, but stated he had no knowledge that this was so. Defense counsel at no time asked the robbery victim if he had been shown the Polaroid picture before making the identification from the photographic line-up.

Defendant's motion to suppress was based on the contentions that the robbery victim's ability to identify him as the man who held the knife to his throat was tainted by the fact that he had seen the defendant shortly after the robbery when he was in police custody, and that the robbery victim may have seen the Polaroid picture before making the

photographic line-up identification. The trial court denied this motion to suppress, and defendant now urges this as his first appeal contention.

At trial the robbery victim positively identified defendant as the man who had held the knife to his throat. Defendant testified in his own behalf and admitted that he was at the Superamerica station in his automobile when the robbery occurred, but denied that he was directly involved. His story is that he was giving two friends a ride in his car, and one of them asked him to stop at the Superamerica store to get some beer. He states he did not know of any plans for a robbery, or of any robbery, until his friends returned to his car. He claims his friends committed the crime without his knowledge.

The jury convicted defendant of robbery, and the trial court sentenced him to fifteen years in prison, also designating him, pursuant to section 46-18-404, MCA, as a dangerous offender for purposes of parole eligibility.

Defendant contends that the pretrial photographic identification process was so suggestive as to create a substantial likelihood of misidentification. He also argues that his right to counsel was denied him because counsel was not present at the photographic line-up session.

The touchstone of a denial of due process emanating from a photographic identification process is whether the process was so suggestive as to present a "substantial likelihood of misidentification." State v. Pendergrass (1980), _____ Mont. _____, 615 P.2d 201, 37 St.Rep. 1370; Manson v. Brathwaite (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140; Neil v. Biggers (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. See, for example, State v. Lara (1978), _____ Mont. _____, 587 P.2d 930, 35 St.Rep. 1699;

State v. Oppelt (1978), 176 Mont. 499, 580 P.2d 110;  where we have applied the rules set forth by the United States Supreme Court. An in-court identification of the defendant is permitted if it is determined that the pretrial identification process did not violate these rules.

Here the robbery victim was in an excellent position to view the robber. They were very close to each other in a well-lit location for at least thirty seconds. His first description of the man who held the knife to his throat was a fair description of the defendant. Eight days later, when he chose the defendant from the photo-array line-up, he did so immediately and with assurance. This eight-day lapse between the robbery and the photo-identification was not, under the circumstances here, sufficient to purge from the victim's mind a reasonably precise picture of the attacker's identity. Nor, of course, can we ignore the testimony which clearly placed the defendant in the car which sped away from the Superamerica station after the robbery. The fact that his car was identified as belonging to the defendant, and that defendant had abandoned his car in an alley a few blocks away from the Superamerica station and was found by the police hiding under another car, is more than a little indicative of his involvement in the robbery. Nor can we ignore the fact that the cash drawer and money stolen from the Superamerica were found abandoned near the car from which defendant had fled, and that defendant's fingerprint was found on a paper sack near the car which was similar to paper sacks used at Superamerica. These factors must be considered along with the identification process, and when so considered, they do not point to a substantial chance of misidentification. Rather, they point straight at defendant's guilt.

We do not find error in the failure to have defense counsel present at the photo-array identification process. The United States Supreme Court in U.S. v. Ash (1973), 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619, has held that the confrontation clause is not violated by a photo-array identification process, and therefore, that the right to counsel does not attach. We have followed Ash, and have refused presently to adopt a stricter rule under our own constitution. See State v. Strain and Young, Cause No. 14863, Decided October 22, 1980.

Defendant next contends that because his defense involved an admission of being at the scene of the crime but of not being involved except after the fact, that he was entitled to an instruction that "mere presence at or about the scene where a crime is committed does not make one a party to a crime." He offers no authority for this instruction, and neither was he prejudiced by the trial court's refusal to give this instruction. Here, the instruction fairly covered the issues raised. The charge of robbery, plus the jury instructions, required that the jury find not only that defendant was present at the scene but that he was the person who held the knife to the store clerk's throat. Thus, the jury was fully aware that mere presence at the scene of a crime is not sufficient to prove criminal involvement. The jury believed that defendant committed the crime by holding the knife to the store clerk's throat, and the evidence is clearly sufficient to sustain this belief.

We agree, however, with defendant's final contention that the trial court erroneously determined that under section 46-18-404, MCA, he was required as a matter of law to designate defendant as a dangerous offender for purposes

of parole eligibility. Defendant had been previously been convicted of a felony in Wyoming less than five years preceding the commission of the crime involved in this case.

At the sentencing hearing the prosecutor urged the court to sentence defendant to impose a twenty-year prison sentence and to designate defendant as a dangerous offender. Defense counsel urged the court to impose no more than a ten-year prison sentence and to designate defendant as a nondangerous offender. In response to these recommendations, the sentencing court stated that "I am going to designate him (the defendant) dangerous, because I feel I have no option under the statute." The court sentenced defendant to fifteen years in prison and designated him as a dangerous offender for purposes of parole eligibility.

Defendant's contention is that the sentencing court was not statutorily required to designate him as a dangerous offender, and thus, had he chosen to do so, could have designated him as nondangerous. The State, on the other hand, argues that the statute leaves no discretion in the sentencing court, and that under the facts of this case the duty of the court to designate defendant as a dangerous offender was mandatory.

For purposes of analysis, we first set forth the statute in its entirety. Section 46-18-404, MCA, provides:

> "Designation as nondangerous offender for purposes of parole eligibility. (1) The sentencing court shall designate an offender a nondangerous offender for purposes of eligibility for parole under part 2 of chapter 23 if:
>
> "(a) during the 5 years preceding the commission of the offense for which the offender is being sentenced, the offender was neither convicted of nor incarcerated for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could

have been imposed; and

"(b) the court has determined, based on any presentence report and the evidence presented at the trial and the sentencing hearing, that the offender does not represent a substantial danger to other persons or society.

"(2) A conviction or incarceration may not be considered under subsection (1)(a) if:

"(a) the offender was less than 18 years of age at the time of the commission of the present offense; or

"(b) the offender has been pardoned for the previous offense on the grounds of innocence or the conviction for such offense has been set aside in a postconviction hearing.

"(3) If the court determines that an offender is not eligible to be designated as a nondangerous offender, it shall make that determination a part of the sentence imposed and shall state the determinaton in the judgment. Whenever the sentence and judgment do not contain such a determination, the offender is considered to have been designated as a nondangerous offender for parole."

Although this statute is not a model of clarity, we conclude that it is mandatory only where the circumstances require the sentencing court to sentence one as a nondangerous offender.

The statute imposes limitations on a sentencing judge in three situations: First, if the judge finds that the defendant was not convicted of felony within 5 years immediately preceding the offense in question, and also finds "that the offender does not represent a substantial danger to other persons or society," the defendant must be designated as a nondangerous offender. Section 46-18-404(1)(a) and (b), supra. This part of the statute does not require the judge to designate one as dangerous; rather, it sets forth the circumstances under which the defendant must be designated as nondangerous.

Second, subsections (2)(a) and (b), set forth the cir- cumstances under which a conviction cannot be considered for

-9-

purposes of triggering a possible determination that one is °a dangerous offender. If the offender was less than eighteen years of age at the time of the "present offense", the prior conviction cannot be used as a basis to trigger a finding that the defendant is dangerous. Or, if the offender had either been pardoned on the grounds of innocence for the previous offense, or had the previous offense set aside in a postconviction hearing, the previous offense cannot be considered as a basis to trigger a finding that the defendant is dangerous. We note here, that defendant makes no claim to come under any of these provisions of the statute.

The third situation, however, is determinative of the issue here. Section 46-18-404(3), supra, sets forth the requirements for the judgment in order that a designation of dangerousness take effect. The first sentence requires that if the court designates one as a dangerous offender, the court must "make that determination a part of the sentence imposed and shall state the determination in the judgment." But the second sentence of this subsection requires that a different result attach if the sentencing court either refuses or fails to make that designation in the judgment. It states:

> "Whenever the sentence and judgment do not contain such a determination, the offender is considered to have been designated as a nondangerous offender for purposes of eligibility for parole." Section 46-18-404(3), MCA.

We cannot ignore this sentence. To declare a defendant ineligible for parole eligibility, the sentencing court is statutorily required to designate him as dangerous for that purpose. Clearly, by failing to make such designation part of the judgment, either by oversight or by an exercise of sentencing discretion, the statute declares that the

-10-

defendant involved is to be "designated as a nondangerous offender for purposes of parole eligibility."

Although there is a designation in the judgment that the "defendant be punished as a dangerous offender, by imprisonment at hard labor . . . for the term of FIFTEEN (15) YEARS," the underlying assumption of the sentencing court when such judgment was entered is that the statute required the sentencing court to designate defendant as a dangerous offender. But, as we have reasoned, the sentencing court was not required by statute to make this designation. By merely failing to make any designation in the judgment as to the defendant's status, the defendant would be statutorily declared nondangerous. The sentencing court did not consider this option when it sentenced the defendant.

The judgment of conviction is affirmed. We remand this cause to the District Court for resentencing.

_Daniel J. Shea_
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

-11-

Mr. Chief Justice Frank I. Haswell, concurring in part and dissenting in part:

I would affirm the judgment and sentence in its entirety.

I concur in affirming the judgment of conviction for the reasons stated in the majority opinion. I dissent from the majority construction of section 46-18-404, MCA and remanding the cause to the District Court for resentencing the defendant.

Although the statute is inartfully drafted, it implies, at least, that a convicted offender is inelegible for designation as a nondangerous offender if he was convicted or incarcerated in any jurisdiction for a felony during the preceding five years. Section 46-18-404(1)(a), MCA. In this case defendant was convicted of burglary on August 25, 1976, in the State of Wyoming. Subsection (3) of the statute simply provides a catchall for the benefit of the defendant in cases where the sentencing court neglects to incorporate defendant's noneligibility for nondangerous offender status in the judgment. I do not construe subsection (3) as a discretionary grant of authority to the sentencing court to confer nondangerous offender status to a convicted felon who has a prior felony conviction within five years.

_Frank I. Haswell_
Chief Justice

- 12 -