No. 93-272

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

    Plaintiff and Respondent,

-vs-

STEVEN TOWER,

    Defendant and Appellant.

FILED

SEP27 1994

Ed Smith

CLERK OF SUPREME COURT,
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Edward P. McLean, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Margaret L. Borg (argued), Public Defender's Office
Missoula, Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General,
Micheal Wellenstein (argued), Assistant Attorney
General, Helena, Montana

        Robert L. Deschamps, III, County Attorney,
Karen S. Townsend, Deputy County Attorney,
Missoula, Montana

Submitted:  May 24, 1994

Decided:  September 27, 19

Filed:

_____
Clerk

Chief Justice J.A. Turnage delivered the Opinion of the Court.


Steven Scott Tower appeals from his conviction, in a jury trial in the Fourth Judicial District Court, Missoula County, of criminal sale of dangerous drugs.  We affirm.

The issues are:

1.  Whether the State was required to set forth a theory of accountability in the information in order to satisfy the legislature's purpose in enacting criminal statutes.

2.  Whether Tower was given sufficient notice of the charged offense to satisfy the requirements of due process.

3.  Whether there was sufficient evidence presented at trial to convict Tower of the criminal sale of dangerous drugs.

During the summer of 1992, Steven Tower, Tron Skarland, and Tim Richardson lived together at a house on Mount Street in Missoula, Montana.  Tower's grandparents owned the house.

A confidential informant told local authorities that illegal drug activities were occurring at the house. The local authorities contacted the State of Montana Criminal Investigation Bureau (CIB) for assistance in providing an undercover officer to attempt to purchase illegal drugs from the residence.

CIB agent Mark Long, posing as a citizen of Butte, Montana, became acquainted with the residents of the Mount Street house.  He and Skarland met on three occasions in August and September of

1992, and Long made three purchases of marijuana from Skarland at the house.

On September 16, 1992, Long went to the Mount Street house to make another, larger, marijuana purchase. Tower and Richardson invited Long in to wait for Skarland's return. When Long told Tower and Richardson he wanted to do some business, they said, "Okay, how much?" Agent Long replied that he wanted four times more than what he had purchased before, and Tower nodded his head and said, "Okay, okay." Agent Long left the house without buying any marijuana that evening.

The next evening, Agent Long, wearing a body wire, again went to the Mount Street house. Once again, Skarland was not home, but Richardson, Tower, and six or seven other people were there. When Skarland did not return after about twenty minutes, Long told Tower that he was going to go to the Town & Country Lounge. He asked Tower to tell Skarland to meet him there, and Tower agreed to do so.

Approximately one hour later, Tower and Skarland approached Long in the parking lot of the Town & Country Lounge. Skarland was driving a pickup truck and Tower was seated in the passenger's seat. Long testified that he went to the passenger side of the vehicle and said he wanted to buy a quarter-pound of marijuana. Skarland replied that would be no problem, produced a plastic baggie containing about an ounce of marijuana, and said something to the effect of "This is the quality you'll be getting." After Long agreed the quality was acceptable, he and Skarland negotiated

3

a price of $700. Long testified that, during the negotiations, Tower passed the sample from Skarland to Long. Long further testified that, while he was counting out the money, Tower explained that they were late because he had forgotten to give Skarland the message that Long was waiting at the Town & Country Lounge. Long gave the money to Tower and told him to count it. When Tower announced it was only $650, Long gave him another $50.

Long testified that Skarland and Tower both said they needed to go somewhere to pick up the marijuana for him. They agreed to meet at Ole's convenience store a half-hour later for delivery of the marijuana. Long testified that both Skarland and Tower gave him directions to Ole's. Prior to meeting Long at Ole's, Skarland and Tower, under surveillance, drove from the Town & Country Lounge to a Toole Avenue house, which they entered briefly. When they exited the house, the person who got into the passenger seat of the truck was observed to be carrying a package.

When Skarland and Tower arrived at Ole's, minutes later, Tower got out of the passenger seat of the truck and went into the store. Long got into the truck and Skarland gave him a duffel bag. In the duffel bag was a baggie containing four ounces of marijuana. Both Skarland and Tower were subsequently arrested.

At trial, the jury heard an audio tape of the September 17 conversations between Long, Skarland, and Tower. Over Tower's objection, the court instructed the jury about accountability for a crime under §§ 45-2-301 and -302, MCA. The jury found Tower guilty of criminal sale of dangerous drugs.

4

Issue 1

Was the State required to set forth a theory of accountability in the information in order to satisfy the legislature's purpose in enacting criminal statutes?

One purpose of the Montana legislature in enacting criminal statutes is "to give fair warning of the nature of the conduct declared to constitute an offense." Section 45-1-102(c), MCA. This statement of purpose was adopted from an Illinois statute, as part of the 1973 general revision of criminal law in Montana. Tower contends that to fulfill this purpose, when the State's case against a criminal defendant is based upon the accountability statutes, the State must give the defendant notice of that fact in the information filed against the defendant.

Montana's accountability statutes are also patterned after Illinois law. Section 45-2-301, MCA, provides:

> Accountability for conduct of another. A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself or that of another and he is legally accountable for such conduct as provided in 45-2-302, or both.

Section 45-2-302, MCA, defines the circumstances under which such accountability may exist. It provides in part that a person is legally accountable for the conduct of another when:

> (3) either before or during the commission of an offense with the purpose to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid such other person in the planning or commission of the offense.

When Montana's legislature adopts a statute from a sister state, Montana courts follow the general rule of also adopting the

construction which has been placed upon that statute by the highest court of the sister state. Dew v. Dower **(1993)**, 258 Mont. 114, 125-26, 852 **P.2d** 549, 556; State v. Murphy **(1977)**, 174 Mont. 307, 311, 570 **P.2d** 1103, 1105. In State v. Oppelt **(1978)**, 176 Mont. 499, 580 **P.2d** 110, and in Murvhv, 570 **P.2d** at 1105, this Court noted that the accountability statutes borrowed from Illinois had not been interpreted to require the theory of accountability to be included in the charging document.

This rule is consistent with the previous law of accountability in Montana. State v. Zadick **(1966)**, 148 Mont. 296, 300, 419 **P.2d** 749, 751. **"[N]o** other facts need be alleged in any indictment or information against . . . an accessory, than are required in an indictmentor information against his principal." Section 94-6423, RCM (1947). The Criminal Law Commission comments to § 45-2-302, MCA, state that the statute "accepts the approach of the existing law and endeavors to develop it in full and systematic fashion."

We hold that the State was not required, under the purpose stated at § 45-1-102(c), MCA, to set forth a theory of accountability in the information.

## Issue 2

Was Tower given sufficient notice of the charged offense to satisfy the requirements of due process?

Tower cites the general rule that due process requires that a person charged with an offense must be duly advised of the nature and cause of the accusation against him. See **Faretta** v. California **(1975)**, 422 U.S. 806, 95 S.Ct. 2525, 45 **L.Ed.2d** 562. He asserts

that due process requires that the information against him should have included language from the accountability statutes.

Under the Model Penal Code and subsequent recodifications of criminal law in a majority of states, a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime; distinctions between what used to be referred to as the "principal" and "accessory before the fact" have largely been abandoned. See 2 W. LaFave and A. Scott, Jr., <u>Substantive Criminal Law</u> § 6.6 (1986). Criminal accountability is not considered a substantive separate offense, but merely a conduit by which to find a person criminally liable for the acts of another. Matter of B.D.C. (1984), 211 Mont. 216, 220-21, 687 P.2d 655, 657.

A charging document must give a

plain, concise, and definite statement of the offense charged, including the name of the offense, whether the offense is a misdemeanor or felony, the name of the person charged, and the time and place of the offense as definitely as can be determined. The charge must state for each count the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Section 46-11-401(1), MCA. In this case, the information alleged that Tower "purposefully or knowingly sold a dangerous drug as defined in Section 50-32-101, MCA, marijuana, to Mark Long."

Additionally, Tower's claim that he was surprised by the accountability instruction is simply not persuasive. Prior to trial, Tower and his counsel were provided with the audio tape, access to the materials in the State's case file, and the opportunity to interview the State's witnesses. The opening statement of

7

the State at trial clearly outlined the evidence which the State intended to present. In light of the defense's knowledge of the State's case, and the consistent history of the law of accountability in Montana, there was every reason to anticipate an accountability instruction.

We conclude that Tower was given fair warning of the nature and cause of the accusation against him, and of the conduct declared to constitute an offense. Because accountability is not a separate offense, we hold that due process did not require that the State set forth a theory of accountability in the information.

## Issue 3

Was sufficient evidence presented at trial to convict Tower of the criminal sale of dangerous drugs?

Skarland testified in Tower's behalf at trial. His testimony minimized Tower's involvement in the sale of the marijuana. Tower claims he had no active role in the marijuana sale and that he was simply in the wrong place at the wrong time.

In reviewing the sufficiency of the evidence to support a jury verdict of conviction in a criminal case, our standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. McLain (1991), 249 Mont. 242, 246, 815 P.2d 147, 150. Viewing the evidence in this case in the light most favorable to the prosecution, it showed that Tower gave Skarland the message to meet Agent Long, and that he clearly understood the purpose of their

8

meeting to be a sale of marijuana. Tower then accompanied Skarland to the meeting, passed the marijuana sample from Skarland to Long, and counted the money Long paid for the marijuana. He gave Long directions to the meeting place for the delivery of the marijuana. He went with Skarland to pick up the marijuana and carried the package apparently containing the marijuana from the house to the truck. He then accompanied Skarland to deliver the marijuana. We conclude that a rational trier of fact could have found Tower guilty, beyond a reasonable doubt, of the criminal sale of dangerous drugs.

We therefore affirm the decision of the jury and of the District Court.

J. A. Turnage
Chief Justice

We concur:

John Conway Harrison

Justices

Justice James C. Nelson specially concurs.

While I concur in the Court's opinion and with the reasoning set forth, I would also clarify our decisions in State v. Murphy (1977), 174 Mont. 307, 570 P.2d 1103, and State v. Oppelt (1978), 176 Mont. 499, 580 P.2d 110.

As stated, in Murwhv, we initially point out that in adopting Montana's accountability statute from Illinois, we follow the rule of statutory construction of "adopt[ing] the construction placed upon [the statute] by the highest court of the state from which it is adopted." Murwhv, 570 P.2d at 1105. Having said that, we then go on to discuss and reject defendant's claim of surprise that the state interjected the accountability theory in the trial and placed it before the jury. Citing the language of the statute, we then, however, observe:

> While the record is clear that no surprise existed, this Court does not condone the method used by the state in charging the defendant. If the state planned to charge the defendant with aiding and abetting. in wrower practice it should have done so from the onset. [Emphasis added.]

Murwhv, 570 P.2d at 1105.

Moreover, we never reached defendant's claim that the accountability instructions were improperly given because defense counsel's failure to lodge proper objections at the time of settlement of instructions precluded the defendant from assigning error to the instructions on appeal. Murphy, 570 P.2d at 1105.

We next addressed this issue in State v. Oppelt (1978), 176 Mont. 499, 580 P.2d 110. In that case the state raised the issue of legal accountability at trial and the court so instructed,

10

although the theory of legal accountability was not set forth in the information. Owwelt, 580 P.2d at 112. Nearly the entirety of our opinion in Owwelt discussed the issue of admissibility of the out-of-court identification from a photographic lineup. In the final paragraph of the opinion, with no analysis whatsoever, we nevertheless, concluded:

> Nor did the court err in allowing the state to introduce the theory of legal accountability at trial when that theory was not listed in the Information. This Court recently held that Montana follows the Illinois rule that "* * * an indictment need not distinguish an act performed by the accused himself and the act of another for which he is legally accountable."

Oppelt, 580 P.2d at 114 (citing Murwhv, 570 P.2d at 1105).

We did not so hold in Murwhy. In that case, as pointed out above, we, in fact, criticized the state for not providing notice of the accountability theory in the charging document, and, instead, grounded our decision to affirm the conviction on the rationale that "no surprise existed" and on the failure of defense counsel to lodge proper objections to the jury instructions on accountability. Murwhv, 570 P.2d at 1105.

Finally, in both Murwhv and in Owwelt, we also imply or state outright that accountability is a separate offense. In Owwelt we refer to the "legal accountability offense," and to legal accountability as "that crime." Owwelt, 580 P.2d at 112. In Murwhv, we refer throughout the opinion to "charg[ing]" the defendant with aiding and abetting or with accountability. Murwhv, 570 P.2d at 1105. As we point out in our discussion of Issue 2 in the instant case, criminal accountability is not a separate

11

substantive offense, but is merely a conduit or theory by which to find one person criminally liable for the acts of another. In re B.D.C. (1984), 211 Mont. 216, 220-21, 687 P.2d 655, 657. Accordingly, our statements in Murphy and in Oppelt to the effect that accountability is a separate offense are in error.

Both Murphy and Oppelt contain dicta and misstatements that are at odds with our decision in the instant case. Accordingly, those cases should be clarified.

For those reasons I specially concur.

_____
Justice

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's conclusion that neither constitutional nor statutory notice requirements are violated when a defendant is convicted based solely on his accountability for the acts of another without first being notified that his accountability is the basis for the charges against him.

I agree with Justice Nelson's concurring opinion that neither *State* v. *Murphy* (1977), 174 Mont. 307, 570 P.2d 1103, nor *State v. Oppelt* (1978), 176 Mont. 499, 580 P.2d 110, support the majority's decision. This Court's conclusion in *Murphy* was just the opposite of the majority's conclusion in this case, and *Murphy* was erroneously relied on in *Oppelt* for a rule of law that *Murphy* did not establish.

However, unlike the author of the concurring opinion, I do not agree that the majority's conclusion can logically be arrived at on other grounds.

Both the Sixth Amendment to the United States Constitution, and Article II, Section 24, of the Montana Constitution, guarantee people who are accused of crimes the right to be informed of both the nature and cause of the accusation against them. Furthermore, those rights guaranteed in the Sixth Amendment are part of the "due process of law" that is guaranteed by the Fourteenth Amendment to the United States Constitution. As stated by the United States Supreme Court in *Faretta v. California* (1975), 422 U.S. 806, 95 S. ct. 2525, 45 L. Ed. 2d 562:

13

The Sixth Amendment includes a compact statement of the rights necessary to a full defense:

> "In all criminal prosecutions, the accused shall enjoy the right . . . <u>to be informed of the nature and cause of the accusation</u>; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

> Because these rights are basic to our adversary system of criminal justice, they are part of the "due process of law" that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States. The rights to <u>notice</u>, confrontation, and compulsory process, when taken together, guarantee that a criminal charge may be answered in a manner now considered fundamental to the fair administration of American justice--through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence. In short, the Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it. *See California v. Green,* 399 U.S. 149, 176 (Harlan, J., concurring).

*Faretta*, 422 U.S. at 818 (emphasis added) (footnote omitted).

The Supreme Court has elaborated on the extent of information which must be included in an indictment to satisfy the Constitution's notice requirements in *Hamling v. United States* (1974), 418 U.S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590. There, the Court stated:

> Our prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. Hagner v. United States, 285 U.S. 427, 76 L.Ed. 861, 52 S.Ct. 417 (1932); United States v. Debrow, 346 U.S. 374, 98 L.Ed. 92, 74 S.Ct. 113 (1953). It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty

14

> or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." United States v. Carll, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882). "Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged."

*Hamling*, 41 L. Ed. 2d at 620-21 (citation omitted).

The majority and concurring opinions conclude that the defendant in this case was adequately notified of the "nature and cause" of the accusation against him by engaging in the legal fiction that being accountable for someone else's sale of dangerous drugs is the same as if defendant had sold dangerous drugs himself. This conclusion is based on a semantic construct which has little to do with reality and ignores the purpose for which we have a notice requirement.

The purpose of a notice requirement is to inform someone accused of a crime of the nature of his or her conduct which forms the basis of the State's accusation. The nature of conduct which must necessarily be proven to convict a person of the sale of dangerous drugs is significantly different than that conduct which is sufficient to show that a defendant assisted someone else with the sale of dangerous drugs. In this case, Count II of the State's information pursuant to which defendant was convicted merely alleged that "[o]n or about September 17, 1992, the above-named defendant purposely or knowingly sold a dangerous drug as defined in § 50-32-101, MCA, marijuana, to Mark Long."

15

How did that accusation adequately inform defendant that the nature of his conduct for which he was actually being charged was helping someone else sell dangerous drugs to Mark Long? How did that mere allegation satisfy the requirement in *Harding* that when the language of a statute is used, it must be accompanied by such a statement of the facts and circumstances as will inform the accused of the "specific" nature of his offense?

Selling drugs and helping another sell drugs are two separate and distinct activities. Those activities are made unlawful by two separate and distinct statutes. No matter how many times this Court says that quilt by accountability is not a separate offense, common sense requires the conclusion that it is a separate offense. If notice that the defendant is accused of selling dangerous drugs is sufficient to inform the accused that he is really charged with helping someone else sell dangerous drugs, then why is it even necessary to have a separate statute making aiding and abetting the commission of a crime, a crime in and of itself?

Even Montana statutory law requires more specific notice to defendant than was provided in this case. Section 46-11-401, MCA, provides in relevant part that "[t]he charge must state for each count the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

The majority concludes that that requirement was satisfied by notifying defendant that he was accused of violating § 45-g-101, MCA, which prohibits the sale of dangerous drugs. However, based

16

on the proof presented in this case, the State could not have convicted defendant of violating that statute alone. Defendant's conviction can only be sustained by reading that statute in combination with Montana's accountability statutes found at § 45-2-301 and -302, MCA. Therefore, by the plain language of § 46-11-401, MCA, the defendant in this case was entitled to notice of the combination of statutes which form the basis of the State's accusations against him.

Based on the facts in this case, as indicated by the State's evidence, defendant had every right to prepare his defense based on the presumption that the State could not prove that he committed the act with which he was accused in Count II of the State's information. There was absolutely no evidence that defendant "sold, bartered, exchanged, or gave away" any dangerous drug as defined in § 50-32-101, MCA. It was not until after the conclusion of all the evidence and defendant had proceeded under that assumption that he was first notified in the form of jury instructions offered by the State that it intended to convict him based on facts and a statute which were never alleged in the information. This is exactly what is prohibited by the United States Constitution, our State Constitution, and Montana's statutory notice requirement. To hold otherwise by engaging in the fiction that selling dangerous drugs is the same thing as being accountable for someone else's sale of dangerous drugs makes a mockery of those notice requirements.

17

The constitutional notice requirement of the Sixth Amendment is very plain and the majority opinion simply engages in semantics to circumvent that requirement. While that may accomplish the desired social **objective** in this case, it does not satisfy this Court's primary responsibility which is to enforce the plain language of the Constitution.

For these reasons I dissent from the majority opinion.

_____
Justice

Justice **Karla** M. Gray and Justice William E. Hunt, Sr., join in the foregoing dissenting opinion.

_____
Justice

_____
Justice