STATE OF MONTANA, Plaintiff and Respondent, *v.* RICH-
ARD NEIL ZADICK, Defendant and Appellant.

No. 11106.
Submitted October 4, 1966. Decided November 2, 1966.
419 P.2d 749.

Robert S. Keller (argued), Wade C. Farlin, Kalispell, for appellant.

James M. Salansky, County Attorney (argued), Kalispell, Forrest H. Anderson, Atty. Gen., Charles M. Joslyn Asst. Atty. Gen. (argued), Helena, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

In this cause defendant was charged by information with assault in the second degree, a felony. He was found guilty by a jury verdict of assault in the third degree, a misdemeanor. The defendant was fined $100 and sentenced to 10 days in jail, with the confinement suspended upon payment of the fine. The fine was paid. Defendant appeals from his conviction, and makes eleven specifications of error. These specifications of error do not resolve themselves into issues which can be briefly stated. We will mention and consider the specifications of error during the course of the opinion.

As is to be expected in an assault case, some of the facts in this case are in dispute. However, the record before this court reveals the following:

On the night of May 30, 1965, Stanley C. Young was injured during an altercation with the defendant and one William Tronson, Jr. The altercation took place on Mr. Young's property. The Young residence is located on Flathead Lake at Point Carolyn about four miles from Somers. On the evening in question, a dance was being held at the Elk's Rest—a camp

operated by the Kalispell B.P.O.E.—situated on property adjoining the Young property.

About 11:30 p. m. on the night in question there were approximately 150 cars parked along both sides of the narrow county road which ran due east from highway 93. This county road was the access road to the Elk's Rest as well as to various summer residences which included the Young residence. About 40 feet from the Young's back door was a graveled driveway which extended northerly from the county road toward the Elk's property. Three vehicles, belonging to Young and his son-in-law were parked in the driveway that evening leaving sufficient space for another car to be parked there.

Defendant and five companions had decided to attend the dance at the Elk's Rest. They drove from Polson to the dance in a 1955 Chevrolet, 2-door sedan operated by one Randall Stevenson. Three boys sat in the front seat and three in the back seat. The defendant was seated in the right rear of the car, and William Tronson, Jr. was seated in the left rear.

At approximately 11:45 p. m. the car operated by Stevenson turned onto Young's driveway. Mr. Young and his son-in-law decided that it would be undesirable to have a car parked where the Stevenson car had parked. The son-in-law called from the back door of the Young residence requesting that the car be moved.

At this point there is conflict in the testimony as to what reply was shouted from the car. Mr. Young testified that someone in the car "in a loud belligerent voice yelled out 'kiss my ass'." The defendant and the other witnesses testified that the remark made by the defendant was "Take a sneak."

Immediately Young, who was on the porch with his son-in-law, proceeded at a rapid pace down the porch steps, across the lawn, and up the embankment bordering the east edge of his driveway.

We should comment that at the trial just what was said became somewhat of an issue as to indicating who was the ag-

gressor. However the defendant on direct examination stated that after he had remarked "Take a sneak" and while Young was proceeding towards the car, he turned to one of his companions and said: "I am not going to take the first punch." He was asked: "What precipitated that statement?" He answered: "Just the way that man was running at the car. Nobody comes at a car like that if they are just going to talk to you." This, in our opinion, is rather indicative of defendant's mood immediately prior to the confrontation.

There is a conflict in the testimony as to who opened the car door on the driver's side and threw the first blow, or blows, but it is undisputed that with the car door open, Young and Tronson engaged in physical contact. The defendant left the car by the right-hand door, proceeded around the rear of the car, and pulled Young away from Tronson with sufficient force that Young fell to the ground.

Young testified that he did not recall what happened after that until he regained consciousness on his lawn some four feet down the embankment from the driveway.

Defendant testified that Young got right back up and came at him. Defendant saw Young coming back at him, stepped one step away from Young, and struck him on the left cheek with his right fist. Young once again fell to the ground. Defendant then stepped past Young and toward the son-in-law who was approaching slowly. Defendant looked back toward Young, saw Tronson kicking Young, and told Tronson to stop. Tronson stopped the kicking. Defendant once again turned toward the son-in-law and took several steps toward him. He told the son-in-law to leave or he would get hurt. The son-in-law retreated toward the Young residence, and the defendant and his companions, at the defendant's urging, left the scene.

There was also testimony that there was beer in the Stevenson car and that the defendant and at least two others in the car had been drinking prior to their arrival at the scene of the altercation.

■ The information contained a single count which charged the crime of second degree assault. It was the prosecution's theory that only one crime was involved, namely, second degree assault, with at least two different ways of committing that crime; one by a direct assault and the other by aiding and abetting. Defendant's specification of error 1 contends that therefore there should have been two counts in the Information. We do not agree.

Section 94-6423, R.C.M.1947, allows for this type of Information and prosecution. It provides in part: "\* \* \* all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment or information against such an accessory, than are required in an indictment or information against his principal." The prosecution was correct in charging a single crime and in showing the two manners in which it could be committed.

■ Defendant's specifications of error 2, 7, 8, 9, and 10, deal with instructions to the jury that were given and were refused. We have examined all the instructions that were given by the district court and have found that they are a correct statement of the law. Those instructions that were refused were either in error or adequately covered by the instructions given. We find no error in the instructions.

■ Defendant's specification of error 4 deals with a comment made by the prosecution to the jury during final argument. During his closing argument the deputy county attorney addressed a juror in this manner. "Would you think it was smart to ask someone to move his car from your driveway? Would you, Mr. Logan?" Mr. Logan was a member of the jury.

While we do not approve of addressing members of the jury by their names, we are not convinced that this single remark is ground for a mistrial. The judge properly instructed the jury

that statements of counsel were not to be regarded as evidence.

Defendant's specification of error 3 contends that the evidence concerning the drinking of intoxicating liquor by the defendant and several of the other witnesses should have been excluded. His main point is that the probative value of such evidence did not outweigh its prejudicial effect. We believe that the outcome of the case itself defeats this contention. A reading of the transcript reveals that a prima facie case of second degree assault was made, but by reason of the defense the jury returned a verdict of guilty of third degree assault. Defendant's own statements on the witness stand were admissions of guilt of that degree of assault. The sentence imposed was light. In view of these facts, we find it hard to accept defendant's contention that the probative value of the evidence was outweighed by its prejudicial effect.

Defendant's specifications of error 5 and 6 deal with certain testimony that was admitted at the trial concerning the remark made from the car and the kicking of Young by Tronson. Again, defendant simply contends that this testimony was highly prejudicial. However, if we were to accept defendant's idea of what is prejudicial, we would be placed in the awkward position of having to rule that all evidence showing that a person has committed a crime is prejudicial and not admissible. The evidence objected to concerns the events leading up to the altercation and the altercation itself. We agree that the evidence may be prejudicial in its end result in that it shows defendant committed an assault, or aided in an assault, but it is not prejudicial in the sense that it is reversible error.

Defendant's specification of error 11 contends that the verdict is contrary to the law and the evidence. We have already examined the instructions given by the district court and found them to be a correct statement of the law. We have summarized the facts as revealed by the record before us. They are sufficient to support the jury's finding of a third degree assault. This contention is without merit.

We have reviewed each specification of error and find them all without merit.

The judgment appealed from is affirmed.

MR. JUSTICES JOHN CONWAY HARRISON, ADAIR, DOYLE and CASTLES, concur.