No. 86-550

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

DAVID HOLZAPFEL,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Arthur D. Agnellino, Missoula, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Marc Racicot, County Prosecutors Services, Helena
        Joe Roberts, Asst. Atty. General, Helena
        Harold Hanser, County Attorney, Billings, Montana

---

Submitted on Briefs: Aug. 20, 1987

Decided: January 14, 1988

Filed: JAN 1 4 1988

*Ethel M. Harrison*

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Defendant, David F. Holzapfel, appeals his conviction of two counts of accountability for the criminal sale of dangerous drugs (felony) in the Thirteenth Judicial District, Yellowstone County. Holzapfel was sentenced to 20 years on each count, the sentences to be served concurrently, with the last ten years suspended in lieu of restrictive probation. We reverse and remand for dismissal of Count I (hereinafter referred to as the Motel Count) and affirm as to Count II (hereinafter referred to as the Apartment Count).

Defendant raises five issues on appeal:

1. Whether the District Court erred in admitting into evidence the results of a post-arrest, nonconsensual, warrantless search of defendant's wallet?

2. Whether the fruits of a warrantless search of defendant's hands after arrest with an ultraviolet light are admissible?

3. Whether it was error to instruct the jury that the State's witness was an accomplice of the defendant as a matter of law?

4. Whether there existed sufficient corroboration of accomplice Mohland to support conviction on the Motel Count?

5. Whether there is sufficient credible evidence to support defendant's conviction on the Apartment Count?

The facts relevant to this appeal are as follows:

Motel Count: On July 16, 1985, an undercover agent for the Montana Criminal Investigation Bureau, Doug King, contacted John Mohland in a Billings bar. While meeting with Mohland, arrangements were made by King to purchase an ounce of cocaine through Mohland for $2,200.

On July 19, 1985, King met Mohland at the same bar. The two men drove to a Thrifty Scot Motel where King waited in Mohland's truck while Mohland went inside the motel. Mohland returned to the truck in a short time stating that the person whom he was seeking was not there. Mohland and King came back to the Thrifty Scot Motel later that evening. Again, Mohland took King's $2,200 and entered the motel while King waited outside in the truck. Mohland returned from the motel with a baggie containing white powder purported to be cocaine. The two men separated and King turned the alleged cocaine over to a police agent.

Trial testimony shows that David Holzapfel, address 3930 Victory Circle, Billings, Montana, was registered at the Thrifty Scot Motel on July 19, 1985. The record states that Holzapfel was staying at the motel for a few days because of an argument between he and his wife.

Apartment Count: On July 23, 1985, King again contacted Mohland at a Billings bar. On this date King asked Mohland to help him purchase 4 ounces of cocaine. As a result of this meeting King met with Mohland at a designated location on July 25, 1985. They drove in Mohland's truck to Victory Circle, a Billings apartment complex. King gave Mohland $8,400 to purchase the drugs. The money had been dusted with invisible detection powder which shows up only under ultraviolet light. Mohland took the money and disappeared into Building 3930. An agent stationed outside of the complex as part of a surveillance team testified that he saw Mohland at the door of Apartment 18 in Building 3930. There were approximately 12 officers attempting to completely surround the apartment buildings for a 360° surveillance.

After approximately ten minutes, Mohland returned to King's location and gave him a baggie containing a white substance which was later identified as cocaine. Police

agents and officers surrounded the vehicle and Mohland was arrested.

Following Mohland's arrest, an officer of the Billings police department and two special agents proceeded to Apartment 18 in Building 3930. No one answered the door to Apartment 18 when they knocked so the officer kicked the door open.

Although the agents and officer did not have a search warrant at the time they kicked the door to Apartment 18 open, they testified that because no one was observed leaving the apartment or the apartment building they believed the suspected drug seller was inside. They apparently believed that they needed to get inside quickly to preserve any evidence in the apartment.

The only people inside Apartment 18 were a woman and a baby, later identified as Esther and Jennifer Holzapfel, David Holzapfel's wife and infant daughter. However, one of the agents testified that Esther Holzapfel told the police that her husband had just left the residence. The apartment was secured until a search warrant was obtained approximately three hours later. The search warrant was obtained in the name of Esther Holzapfel for the apartment of Esther Holzapfel. The search revealed books about drugs and drug manufacturing, a scale, plastic baggies, plastic vials and other alleged drug paraphernalia.

Around 3:30 or 4:00 that afternoon, while the police were waiting for the search warrant, David Holzapfel appeared at the apartment with a friend. The friend, Harold C. James, Jr., testified that he had been with David Holzapfel since approximately noon of that day, July 25, 1985. However, on cross-examination James indicated that Holzapfel may have arrived at least two hours after noon. Holzapfel supposedly came to James' house to solicit his help in moving some heavy

furniture. After watching T.V. and talking for "a while" they proceeded to Apartment 18, in Victory Circle where defendant lived with his wife, Esther Holzapfel and their daughter. When confronted at the apartment door and denied entrance, David Holzapfel walked away from the apartment complex. James was retained and questioned for approximately 2 to 3 hours.

At the time of his arrest, John Mohland told the police that David Holzapfel had sold him cocaine on July 19 at the Thrifty Scot Motel and on July 25 at Apartment 18, Building 3930, Victory Circle. On July 25, David Holzapfel called an attorney, Allen Beck, and requested Beck to find out if a warrant for his arrest had been issued. Beck talked with the Yellowstone County Special Deputy County Attorney and made arrangements with him to have David Holzapfel arrested at Beck's office the following day.

David Holzapfel was arrested at Allen Beck's office on July 26, 1985. Special agent McKay transported Holzapfel to the Yellowstone County Jail where he was booked. Without obtaining a search warrant, Agent McKay took Holzapfel's wallet from the jailer and examined it under an ultraviolet light. McKay testified that in the wallet he found "apparent traces of invisible flourescent detection powder." Immediately after searching the wallet, agent McKay searched defendant's hands with the ultraviolet light. He found traces of the detection powder on the knuckle of defendant's right ring finger.

At trial Mohland testified as the State's witness. He claimed that David Holzapfel sold to him for Doug King one ounce of cocaine on July 19, 1985, at the Thrifty Scot Motel, and 4 ounces of cocaine on July 25, 1985, at Apartment 18, Building 3930, Victory Circle. The District Court instructed

the jury that Mohland was Holzapfel's accomplice as a matter of law.

Defendant moved the District Court to suppress the evidence obtained during the search of Apartment 18, Building 3930, Victory Circle and from the warrantless searches of his wallet and hands while being jailed. All motions were denied. In spite of objections by defendant at trial, all the evidence obtained during these searches was introduced.

David Holzapfel was found guilty on both Counts for accountability for the criminal sale of dangerous drugs (felony). From these convictions, David Holzapfel appeals.

## Issue No. 1

Whether the District Court erred in admitting into evidence the results of a post-arrest, nonconsensual warrantless search of defendant's wallet.

Holzapfel argues that Officer McKay's inspection of the wallet violated his privacy rights under the U.S. Constitution and the Montana Constitution because McKay did not obtain a warrant prior to the search. The State responds that § 46-5-101, MCA, excepts McKay's actions from the warrant requirement.

Section 46-5-101, MCA, states:

46-5-101. Searches and seizures--when authorized. A search of a person, object, or place may be made and instruments, articles, or things may be seized in accordance with the provisions of this chapter when the search is made:

(1) as an incident to a lawful arrest;

This statute and the State's interest in conducting a search, whether it be incident to lawful arrest or an inventory search, must be weighed against the individual's expectation of privacy and the other rights afforded

- 6 -

individuals by the U.S. Constitution, Fourth Amendment and the Montana Constitution, Art. II, §§ 10 and 11.

In balancing the Fourth Amendment interest, the Ninth Circuit Court of Appeals has held that a "warrantless search of personal possessions at the station house pursuant to a valid arrest does not violate one's Fourth Amendment rights." United States v. King, 472 F.2d 1, 7 (9th Cir. 1972), cert. denied, 414 U.S. 864 (1973); and see generally Annot., 29 A.L.R.4th 771, 847. In United States v. Ziller (9th Cir. 1980), 623 F.2d 562, cert. denied, 449 U.S. 877 (1980), and in United States v. Passaro (9th Cir. 1980), 624 F.2d 938, cert. denied, 449 U.S. 1113 (1981), the Court faced the issue of the validity of a warrantless investigatory search at the station house of an arrestee's wallet. In Passaro, the Court stated that a wallet is an element of clothing, "which is, for a reasonable time following a legal arrest, taken out of the realm of protection from police interest." Passaro, 624 F.2d at 944, and see Ziller, 623 F.2d at 563. Thus, the search of the wallet in this case, as in Ziller and Passaro, was valid under the Fourth Amendment to the U.S. Constitution.

The search also satisfies the privacy guarantees of the Montana Constitution. See City of Helena v. Lamping (Mont. 1986), 719 P.2d 1245, 43 St.Rep. 901. In Lamping we adopted the Ninth Circuit's distinction between searches of the person and objects immediately associated with the person, and searches of possessions within an arrestee's immediate control. The item searched in Lamping was an open pack of cigarettes found in the arrestee's pocket. We held in Lamping that a search incident to arrest of the person or of objects immediately associated with the person requires no warrant because the arrest reduces the arrestee's expectation of privacy. Lamping, 719 at 1247. Under Ziller and Passaro,

- 7 -

a wallet is a possession immediately associated with the person which may be searched pursuant to a search of the person following a valid arrest. We adopt this characterization of wallets, and thus McKay's intrusion was reasonable. Once a search incident to arrest is found to be reasonable, the State need not show that the evidence was destructible. State v. Ulrich (1980), 187 Mont. 347, 354, 609 P.2d 1218, 1222.

We affirm admission of evidence showing the presence of the detection powder in defendant's wallet.

Issue No. 2

Whether the fruits of a warrantless search of defendant's hands after arrest with an ultraviolet light are admissible.

The first problem presented by this issue is the question of whether exposing an arrestee's hand to an ultraviolet light constitutes a search under the plain view doctrine. If the exposure does not constitute a search, Holzapfel does not have a legitimate expectation of privacy in what may be revealed by shining such a light on his hands. See State v. Allen (1980), 188 Mont. 135, 612 P.2d 199.

According to one authority, courts have had "considerable difficulty of whether such use of an ultraviolet lamp itself constitutes a search." See 1 W. Lafave, Search and Seizure § 2.2(d) at 350 (2d ed. 1987). However, the "numerical majority have reached the conclusion that this conduct is not a search in the Fourth Amendment sense." 1 W. Lafave, Search and Seizure § 2.2(d) at 350 (2d ed. 1987). One of the courts in the numerical majority, facing a fact pattern similar to the case currently before us, stated the rationale for holding that shining an ultraviolet light may not always constitute a search:

> [D]efendants had no reasonable expectation of privacy as to the presence of foreign matter on their hands independent of the expectation of privacy of their premises which had been legitimately invaded by the police. The [flourescent] grease may be compared to a physical characteristic, such as a fingerprint or one's voice, which 'is constantly exposed to the public.' United States v. Dionisio, 410 U.S. 1, 14, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). The Fourth Amendment provides no protection for what 'a person knowingly exposes to the public.' Katz v. United States, supra at 351 of 389 U.S., at 511 of 88 S.Ct. It is true that the grease could not be detected with the naked eye, but then, neither may a fingerprint be examined until there has been an application of ink. Furthermore, the examination was both limited and controlled, affording no opportunity to learn any information other than that specifically sought: Have the persons hands been in contact with treated contraband? In this respect, the examination was more circumscribed than any eavesdropping, electronic surveillance, long-distance viewing with binoculars, or even the use of a flashlight. Also, it involved no personal indignities or physical discomfort, and was neither annoying, frightening, nor humiliating.

Commonwealth v. DeWitt (Pa.Super. 1973), 314 A.2d 27, 30-31. We agree with the rationale of DeWitt and hold that under the facts of this case, the shining of the ultraviolet light does not constitute a search so as to implicate privacy rights under the U.S. or Montana Constitution. The fact that Holzapfel was validly arrested; that the wallet was properly seized; and that the light only afforded an opportunity to learn if Holzapfel's hand may have touched the drug money, persuades us in this respect.

We affirm admission of evidence showing the traces of detection powder on defendant's hand.

Issue No. 3

Whether it was error to instruct the jury that the State's witness was an accomplice of the defendant as a matter of law.

Jury Instruction No. 25 read:

You are instructed that John Mohland is an accomplice in this case. In this respect, you are to be guided by the following rules of law:

1). The testimony of an accomplice ought to be viewed with distrust. This does not mean that you may arbitrarily disregard such testimony, but should give it the weight to which you find it entitled, after examining it with care and caution, and in light of all the evidence in the case.

2). A conviction cannot be had on the testimony of an accomplice unless he is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

The defendant did not object to the instruction as given. He cannot now argue that it is in error. Failure to object to the instruction at the trial level amounts to a waiver of the right to raise an objection on appeal. State v. Long (Mont. 1986), 726 P.2d 1364, 1369, 43 St.Rep. 1948, 1950.

                              Issue No. 4

Whether there existed sufficient corroboration of accomplice Mohland to support conviction on the Motel Count.

The sufficiency of evidence necessary to corroborate accomplice testimony is a question of law. State v. Standley (1978), 179 Mont. 153, 158, 586 P.2d 1075, 1078. The relevant statutory provision, § 46-16-213, MCA, provides:

Testimony of person legally accountable. A conviction cannot be had on the testimony of one responsible or legally accountable for the same

- 10 -

offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

In reviewing the sufficiency of corroborating testimony, it is viewed in a light most favorable to the State. State v. Pascgo (1977), 173 Mont. 121, 125, 566 P.2d 802, 805. However, an accused cannot be convicted solely on accomplice testimony. State v. Harvey (1979), 184 Mont. 423, 431, 603 P.2d 661, 666.

Corroborating evidence may be circumstantial, but it must raise more than a suspicion of the defendant's involvement in, or opportunity to commit the crime charged. State v. Kemp (1979), 182 Mont. 383, 387, 597 P.2d 96, 99.

The evidence convicting Holzapfel of the Motel Count was almost entirely the testimony of accomplice John Mohland.

Mohland testified that he purchased one ounce of cocaine from Holzapfel in the Thrifty Scot Motel while undercover agent, Doug King, waited outside. No one saw Holzapfel in or near the motel at the time of the drug sale. No one saw which room Mohland entered or exited while inside the motel. The only corroborating testimony linking Holzapfel to the Thrifty Scot Motel was that of two motel employees who testified that David Holzapfel was registered at the Thrifty Scot Motel on July 19, 1985, the date Mohland purchased the drugs. The prosecution bears the burden of producing "corroborating evidence which, of itself and without word or direction from the accomplices' testimony, tends to connect the defendant with commission of the offense." Kemp, 597 P.2d at 99-100.

The corroborating testimony in this situation is insufficient to convict Holzapfel of the Motel Count, and we therefore remand for dismissal of the Motel Count.

## Issue No. 5

Whether there is sufficient credible evidence to support defendant's conviction on the Apartment Count.

The test for "the sufficiency of the evidence to support the judgment of conviction is whether there is substantial evidence to support the conviction viewed in a light most favorable to the State." State v. Stokoe (Mont. 1986), 730 P.2d 415, 417, 43 St.Rep. 2336, 2338. Substantial evidence is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Stokoe, 730 P.2d at 417 (quoting State v. Kutnyak (Mont. 1984), 685 P.2d 901, 910-911, 41 St.Rep. 1277, 1289).

Substantial relevant evidence in the record supports Holzapfel's conviction on the Motel Count. Mohland's testimony that Holzapfel sold him the drugs is accompanied by evidence showing that Holzapfel resided in the apartment Mohland emerged from in possession of the cocaine, that Holzapfel was in the apartment at the time of the sale of the drugs, that Holzapfel touched the money used by Mohland to buy the cocaine, and that Holzapfel possessed equipment used to measure and contain illegal drugs.

Thus we affirm the conviction on the Apartment Count.

_____
Justice

We Concur:

_____
Chief Justice

_____

- 12 -

_L. C. Gulbrandson_

_____

_____
Justices

Mr. Justice William E. Hunt, Sr., dissenting:


I strongly disagree with the majority's affirmation of the first issue presented. Unfortunately, law in this state, as well as nationally, has reflected a trend toward diminishing the individual rights of suspected criminals. The police procedure in this case goes beyond that which can be tolerated under the guise of a reasonable inventory search or a search incident to arrest.

In State v. Sawyer (1977), 174 Mont. 512, 571 P.2d 1131, a unanimous court held that an inventory search is a substantial infringement upon individual privacy and therefore it is subject to the right of privacy provision, as well as the search and seizure provision of the Montana Constitution.

The majority agrees that using the ultraviolet light to look for detection powder in Holzapfel's wallet amounted to a search. The majority then relies upon Lamping, 719 P.2d 1245, in finding that the search fell within acceptable privacy limits following a lawful arrest.

To check the contents of defendant's wallet with respect to the amount of money contained therein would have been permissible as part of an inventory search. See State v. Armstrong (1980), 189 Mont. 407, 616 P.2d 341. To inventory the amount of cash carried on a defendant before incarceration does not go beyond a person's reasonable expectation of privacy.

Likewise, the wallet in and of itself would have been admissible as evidence seized incident to lawful arrest. See State v. Leavens (Mont. 1986), 723 P.2d 236, 238, 43 St.Rep. 1431, 1434.

14

David Holzapfel was arrested at his attorney's office, then taken to the jailhouse to be booked. His wallet was in the jailor's possession when agent McKay retrieved it and searched it with an ultraviolet light. It is intellectually dishonest to call such a procedure a lawful "search incident to arrest."

The United States Supreme Court has faced a similar question in Cupp v. Murphey (1973), 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900. It is helpful to see what this country's highest court said in delineating the boundaries beyond which law enforcement cannot exceed when conducting searches and seizures.

In Cupp, the defendant voluntarily appeared at the police station to be questioned about the strangulation of his estranged wife. During questioning a dark spot underneath defendant's fingernail was noticed. Upon request to look more closely at the spot, defendant hid his hands in his pockets, rubbed them together and refused to cooperate with the police. Against defendant's will, the police scraped under defendant's nail, obtaining what was later identified as blood, skin and nightgown fibers from his wife's body. In reversing the Ninth Circuit Court of Appeals, the United States Supreme Court held that the substances found during that "search and seizure" were admissible as evidence even though a search warrant was not obtained. The court stated that the circumstances "justified the police in subjecting him to the very limited search necessary to preserve the highest evanescent evidence they found under his fingernails." (Emphasis added.) 412 U.S. at 296.

Justice Marshall, in a concurring opinion, clarified the application of the decision. "The scope of search must be

15

strictly limited in terms of the circumstances that justify the search." 412 U.S. at 299.

In the recent case of State v. Lamere (Mont. 1987), ___ P.2d ___, 44 St.Rep. 690, this Court addressed the permissible scope of search of a defendant or his belongings prior to incarceration. In Lamere, this Court adopted the rule from the very recent United States Supreme Court decision, Colorado v. Bertine, No. 85-889, decided January 14, 1987. Bertine held that inventory searches were admissible when: 1) police are following standardized procedures; 2) police are not acting in bad faith or for the sole purpose of investigation; and 3) by securing the property, police are protecting it from unauthorized interference and to protect against claims of vandalism, theft or negligence. 44 St.Rep. at 693.

In the present case, the record is void of any reason why a search warrant could not be obtained before defendant's wallet was searched with an ultraviolet light for traces of detection powder. Once the wallet was in the jailer's custody there was no danger of the detection powder being lost, destroyed or disappearing. The powder certainly was not endangering anyone by its invisible presence in defendant's wallet. Nor was the powder an illicit drug or contraband. Searching with an ultraviolet light is not a usual, standardized procedure. It is evident that agent McKay was searching defendant's wallet with an ultraviolet light solely for the purpose of investigation. A search warrant should have been required. I believe that the failure to obtain a search warrant renders the admission of evidence of fluorescent powder found inside the wallet reversible error.

_____
Justice

Mr. Justice John C. Sheehy joins in the foregoing dissent of Mr. William E. Hunt, Sr.

_____
Justice

16