**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM JAY GOLLEHON,
      *Petitioner-Appellant,*

v.

MICHAEL MAHONEY,
      *Respondent-Appellee.*

No. 09-99011

D.C. No.
6:95-cv-00037-CCL

OPINION

Appeal from the United States District Court
for the District of Montana
Charles C. Lovell, District Judge, Presiding

Argued and Submitted
August 3, 2010—Portland, Oregon

Filed November 22, 2010

Before: Jerome Farris, Diarmuid F. O'Scannlain and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge O'Scannlain

18647

## COUNSEL

Michael Donahoe, Senior Litigator, Federal Defenders of Montana, Helena, Montana, argued the cause for the petitioner-appellant and filed briefs. With him on the briefs was Anthony R. Gallagher, Federal Defender, Federal Defenders of Montana, Helena, Montana.

John Paulson, Assistant Attorney General, Helena, Montana, argued the cause for the respondent-appellee and filed a brief. With him on the brief was Steve Bullock, Montana Attorney General, Helena, Montana.

## OPINION

O'SCANNLAIN, Circuit Judge:

We are called upon to decide whether a state court defendant lacked fair notice as a matter of federal Constitutional law that aiding and abetting a deliberate homicide would subject him to the death penalty in Montana.

I

A

On September 2, 1990, the badly beaten body of inmate Gerald Pileggi was found lying in the exercise yard of the Montana State Prison in Deer Lodge, Montana.[1] Several witnesses had seen inmates William Gollehon and Douglas Turner both strike Pileggi multiple times with baseball bats. An autopsy revealed that Pileggi died from massive head injuries, including a blow to the top of the head which had caved in part of his skull, as well as a blow to the side of his face which had collapsed his forehead, torn his brain, and ruptured his eyeball.

Gollehon and Turner were jointly charged with deliberate homicide for the beating death of Pileggi. The information was later amended to add an alternative count of deliberate homicide by accountability.[2] The difference between these counts, as explained by the Montana Supreme Court, is that the "charge of deliberate homicide by accountability allowed

---

[1]These facts are summarized from the Montana Supreme Court decision affirming Gollehon's conviction and sentence. *See State v. Gollehon*, 864 P.2d 249, 252-54 (Mont. 1993).

[2]This second count alleged that "defendants, with the purpose to promote or facilitate the commission of the offense of deliberate homicide, aided, abetted, or attempted to aid one another in the commission of the offense of deliberate homicide of Gerald Pileggi by striking him on the head with baseball bats."

the jury to convict both men involved in the deliberate homicide without having to make the determination of who struck the fatal blow." *State v. Gollehon*, 864 P.2d 249, 261-62 (Mont. 1993) ("*Gollehon I*"). After a joint trial, the jury found Gollehon and Turner guilty of deliberate homicide by accountability. Both were sentenced to death.

B

On direct appeal, Gollehon argued that the trial court erred by sentencing him to death for deliberate homicide by accountability because no sentence for this crime was set by statute. *Id.* at 264. A divided Montana Supreme Court rejected this argument, holding that deliberate homicide by accountability is the same offense as deliberate homicide and therefore subject to the same penalties, including death. *Id.* at 264-65. The three dissenting justices contended that because no statute explicitly makes death an available penalty for deliberate homicide by accountability, the rule of lenity required that a fallback sentencing provision for felonies without a specified penalty should apply. *Id.* at 270-72 (Gray, J., dissenting).

After state post-conviction proceedings, Gollehon filed a petition for a writ of habeas corpus in the federal district court arguing that his right to due process was violated because he lacked fair notice that deliberate homicide by accountability is punishable by death in Montana. The district court held that this claim was unexhausted and denied his petition on other grounds. Although, on appeal to this court, we affirmed the district court as to grounds it reached, we concluded that Gollehon had "sufficiently presented the federal issue to the state court." *Gollehon v. Mahoney*, 259 F. App'x 1, 3 (9th Cir. 2007) ("*Gollehon II*"). Accordingly, we remanded this final remaining claim to the district court for consideration on the merits.

On remand, the district court denied Gollehon's motion for summary judgment on the due process claim, dismissed the habeas petition, and sua sponte denied a certificate of appealability ("COA"). *See Gollehon v. Mahoney*, 2009 WL 2148643 (D. Mont. July 15, 2009) ("*Gollehon III*"). Gollehon timely applied to this court for a COA pursuant to 28 U.S.C. § 2253(c). After a round of briefing and argument, we now GRANT Gollehon's request for a COA as to the fair notice claim[3] and proceed to consider the merits.[4] *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

Because Gollehon filed his habeas petition before the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), pre-AEDPA law applies. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Accordingly, we review the district court's denial of habeas relief de novo and the district court's factual findings for clear error. *Summerlin v. Schriro*, 427 F.3d 623, 628 (9th Cir. 2005) (en banc). Under pre-AEDPA law, we owe no deference to state-court rulings on questions of constitutional law, since "we simply resolve the legal issue on the merits, under the ordinary rules." *Id.* at 628 (internal quotation marks omitted). We presume the state court's findings of fact to be correct unless they are not fairly supported by the record. *Id.* at 629.

## II

**[1]** "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair

---

[3]We limit the COA to the question "[w]hether Petitioner's right to due process under the Fourteenth Amendment was violated since the relevant Montana statutes and case law failed to provide sufficient notice that the crime of homicide by accountability is punishable by the death penalty." Mot. for COA at 1.

[4]Because the parties thoroughly argued the merits of the due process claim in their briefing on the motion for a COA, as well as during the one-hour oral argument we held on the motion, we agree that further briefing and argument is unnecessary.

notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996). To resolve Gollehon's fair notice claim, we must decide whether his death sentence for deliberate homicide by accountability was so "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue" that it violated his right to due process under the Fourteenth Amendment. *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964). "The beginning point for a *Bouie* analysis is the statutory language at issue, its legislative history, and judicial constructions of the statute." *Webster v. Woodford*, 369 F.3d 1062, 1069 (9th Cir. 2004). Accordingly, we begin with the text of the relevant statutes.[5]

**[2]** Section 45-2-301 of the Montana Code provides that "[a] person is responsible for conduct that is an element of an offense if the conduct is either that of the person himself or that of another and he is legally accountable for the conduct as provided in section 45-2-302, or both." Mont. Code Ann. § 45-2-301 (1990).[6] Section 45-2-302, in turn, provides that "[a] person is legally accountable for the conduct of another when . . . either before or during the commission of an offense with the purpose to promote or facilitate the commission, the person solicits, aids, abets, agrees, or attempts to aid the other person in the planning or commission of the offense." *Id.* § 45-2-302(3). Gollehon does not contest that because he aided and abetted the killing of Gerald Pileggi, he is legally accountable for deliberate homicide pursuant to section 45-2-

---

[5]Although we are bound by the Montana Supreme Court's interpretation of Montana law, *see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam), our task is to determine whether its interpretation was so unexpected as to violate due process. As to this determination, we owe no deference to the Montana Supreme Court. *See McSherry v. Block*, 880 F.2d 1049, 1053 (9th Cir. 1989).

[6]All statutory references are to the Montana Code as it existed in 1990, the year of Gollehon's offense.

302.[7] We therefore consider whether section 45-2-301 provided Gollehon with fair notice that a person "responsible" for an offense by way of accountability is subject to the penalty specified for that offense.

[3] To determine the plain meaning of a statute, we traditionally refer to dictionaries in use at the time of the statute's enactment. *See Lamar v. United States*, 241 U.S. 103, 113 (1916). Because Montana's accountability statutes were enacted in 1973, we turn to various contemporaneous definitions. The version of *Black's Law Dictionary* in effect at the time defined "responsible" as "[l]iable, legally accountable or answerable." *Black's Law Dictionary* 1060 (4th ed. 1951). *Webster's New Collegiate Dictionary* defined "responsible" as "liable to legal review or in the case of fault to penalties," and "liable to be called on to answer." *Webster's New Collegiate Dictionary* 986-87 (1973). Section 45-2-301 thus made clear that a person who is "responsible" for an offense by way of accountability is liable for that offense and must answer for it by way of a penalty.

[4] Gollehon contends that the only applicable penalty was Montana's default penalty for felonies for which "no penalty is otherwise provided," *i.e.*, up to 10 years in the state prison, a fine of up to $50,000, or both. Mont. Code Ann. § 46-18-213. But no penalty was specified for accountability because accountability is not a separate offense requiring a separate penalty. Rather, it is a theory of liability for an offense for which penalties were already provided by the legislature.[8] In the case of deliberate homicide, the legislature unambiguously

---

[7]Here, the relevant offense is deliberate homicide, which is committed when a person "purposely or knowingly causes the death of another human being." Mont. Code Ann. § 45-5-102(1).

[8]As such, accountability differs from inchoate offenses, which are distinct from their target crimes and therefore require their own penalty provisions. *See* Mont. Code Ann. § 45-4-101(2) (solicitation); *id.* § 45-4-102(3) (conspiracy); *id.* § 45-4-103(3) (attempt).

provided for a penalty of death, life imprisonment, or 10-100 years' imprisonment. *Id.* § 45-5-102(2). Consequently, we conclude that Montana's accountability statutes, together with the deliberate homicide statute, made it "reasonably clear at the relevant time" that Gollehon's conduct would subject him to the death penalty. *United States v. Lanier*, 520 U.S. 259, 267 (1997).

### III

Although we believe that Montana's criminal statutes, standing alone, supplied all the fair notice that the Due Process Clause requires, we proceed to consider whether prior judicial decisions also contributed to such notice. *See id.* (holding that the "touchstone" of the due-process inquiry "is whether the statute, either standing alone or *as construed*" provided fair notice (emphasis added)).

As an initial matter, we address Gollehon's contention that he lacked fair notice because "no decision of the Montana Supreme Court (up until [his] case) even considered whether an offender convicted of deliberate homicide by accountability could be sentenced to death." Mot. for COA at 12. "Due process is not, however, violated simply because the issue is a matter of first impression." *Ponnapula v. Spitzer*, 297 F.3d 172, 183 (2d Cir. 2002). So long as "prior decisions gave reasonable warning" that the law would be applied in a certain way, they need not present a "fundamentally similar" factual scenario. *Lanier*, 520 U.S. at 269 (internal quotation marks omitted); *see also Rose v. Locke*, 423 U.S. 48, 51 (1975) (per curiam) (noting that "the existence of previous applications of a particular statute to one set of facts" is not required to survive a "lack-of-fair-warning challenge").

**[5]** Here, prior decisions gave Gollehon reasonable warning that aiding and abetting a deliberate homicide would subject him to the death penalty.**⁹** For example, in *Matter of*

---

**⁹**"Because the *Bouie* analysis focuses on notice to the defendant, we look only to cases decided before the crime was committed." *Clark v. Brown*, 450 F.3d 898, 912 (9th Cir. 2006).

*B.D.C.*, 687 P.2d 655 (Mont. 1984), the Montana Supreme Court explained that accountability "is merely a conduit by which one is held criminally accountable for the acts of another." *Id.* at 657. As such, accountability is not a "separate offense" from "the underlying offense which has been physically committed by another, but for which the defendant is equally responsible." *Id.*; *accord State v. Zadick*, 419 P.2d 749, 751 (Mont. 1966) (holding that aiding and abetting a crime is merely a "different way[ ] of committing that crime"). The Montana Supreme Court put Gollehon on notice that a conviction of deliberate homicide by accountability would make him "liable as a principal actor in that homicide" and, accordingly, subject to the death penalty. *Gollehon I*, 864 P.2d at 266.

Moreover, prior to Gollehon's offense, the Montana Supreme Court had explicitly adopted the Illinois Supreme Court's construction of Illinois's accountability provisions, from which Montana's provisions were adopted. *See State v. Oppelt*, 580 P.2d 110, 114 (Mont. 1978); *State v. Murphy*, 570 P.2d 1103, 1105 (Mont. 1977). By 1983, the Illinois Supreme Court "ha[d] already held that the death penalty may be constitutionally imposed for murder convictions based on accountability." *People v. Garcia*, 454 N.E.2d 274, 284 (Ill. 1983); *see also People v. Ruiz*, 447 N.E.2d 148, 154 (Ill. 1983) (affirming death sentence for defendant convicted of murder by accountability). These Illinois cases provided further notice to Gollehon that a conviction under an accountability theory would not automatically immunize him from the death penalty. *See Locke*, 423 U.S. at 52 (concluding that "the Tennessee Supreme Court had given sufficiently clear notice" that it would follow Maine's construction of a statute "which the Tennessee court had at that point twice equated with its own").

[6] Numerous Montana decisions also made clear that persons convicted of felonies by accountability did not receive the 10-year and/or $50,000 default penalty set forth in section

46-18-213, which Gollehon claims was applicable. *See, e.g.*, *State v. Senn*, 795 P.2d 973, 974 (Mont. 1990) (20 years for forgery by accountability); *State v. Randall*, 772 P.2d 868, 869 (Mont. 1989) (15 years for robbery by accountability), *overruled on other grounds by State v. Ayers*, 68 P.3d 768 (Mont. 2003); *State v. Holzapfel*, 748 P.2d 953, 954 (Mont. 1988) (20 years for sale of dangerous drugs by accountability), *overruled on other grounds by State v. Hardaway*, 36 P.3d 900 (Mont. 2001); *State v. Riley*, 649 P.2d 1273, 1274 (Mont. 1982) (20 years suspended for deliberate homicide by accountability*); State v. Powers*, 645 P.2d 1357, 1360 (Mont. 1982) (same).[10] Furthermore, Gollehon can point to no published case in which a defendant was sentenced to the default penalty for *any* felony, let alone felonies by accountability. We therefore reject the contention that Gollehon reasonably expected to receive the default penalty for aiding and abetting a deliberate homicide. *See Free v. Peters*, 12 F.3d 700, 702-03 (7th Cir. 1993) (rejecting a murderer's fair-notice challenge to his death sentence given that "there were no published decisions supporting [his] interpretation" of the felony-murder statute).

## IV

We next consult the history of Montana's treatment of aiders and abettors to determine whether the death penalty was an unfair surprise to Gollehon.

At common law, the participants in a felony were classified into the following categories:

---

[10]Gollehon attempts to distinguish *Powers* on the ground that the defendants were also "charged directly with, and apparently convicted of, the offense of deliberate homicide" rather than deliberate homicide by accountability. Mot. for COA at 11. The dissent in *Powers* explains, however, that "the State, its counsel realizing that Jennifer Denise Gill did not participate in the critical beatings that brought about the death, tried its case . . . on the basis of accountability, sections 45-2-301 and -302." 645 P.2d at 1364 (Sheehy, J., dissenting).

(1) *first-degree principals*, those who actually committed the crime in question; (2) *second-degree principals*, aiders and abettors present at the scene of the crime; (3) *accessories before the fact*, aiders and abettors who helped the principal before the basic criminal event took place; and (4) *accessories after the fact*, persons who helped the principal after the basic criminal event took place.

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007). Generally, "a person in any one of the four categories could be convicted and subjected to the penalties authorized for commission of the felony." 2 Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* § 6.6 (1986); *see also* 4 William Blackstone, *Commentaries* *39 (explaining that "the general rule" is "that accessories shall suffer the same punishment as their principals: if one be liable to death, the other is also liable"); *United States v. Gooding*, 25 U.S. 460, 469 (1827) ("[I]t is the known and familiar principle of criminal jurisprudence, that he who commands, or procures a crime to be done, if it is done, is guilty of the crime, and the act is his act."); *State v. Geddes*, 55 P. 919, 925 (Mont. 1899) ("[T]he common law of crimes makes no distinction in the punishment between a principal and an accessory; the offense of each being felony, of which the penalty was originally death.").

**[7]** Montana, like "all States and the Federal Government," has "expressly abrogated the distinction among principals and aiders and abettors in the second and third categories" and "treats those who fall into the first three categories alike."[11]

---

[11]Accessories after the fact are now considered a separate category. *See* LaFave & Scott, *supra*, § 6.6 (explaining that "the accessory after the fact, by virtue of his involvement only after the felony was completed, [is] not truly an accomplice in the felony," and is therefore subjected "to different and lesser penalties"); *see also id.* § 6.9 ("Unlike the principal in the second degree and accessory before the fact, the accessory after the fact is generally not treated as a party to the felony nor subject to the same punishment prescribed for the felony.").

*Duenas-Alvarez*, 549 U.S. at 189-90; *see also id.* at 195 App. A (citing Mont. Code Ann. §§ 45-2-301, 45-2-302); Mont. Code Ann. § 45-2-302 cmt. (noting that the precursors to section 45-2-302 "had as their primary purpose the elimination of the elaborate common law distinctions between principals in the first degree, principals in the second degree, and the accessories before the fact"). Cases spanning almost a century before Gollehon's offense provided ample warning that aiding and abetting an offense is another way of committing that offense, and is punished accordingly. *See, e.g.*, *In re McMaster*, 529 P.2d 1391, 1393 (Mont. 1974) ("[I]t is sufficient to prove that appellant aided and abetted in the commission of the crime, thereby making appellant a principal and guilty of that crime itself."); *Zadick*, 419 P.2d at 751 ("[A]ll persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet its commission, . . . must be prosecuted, tried, and punished as principals . . . ." (internal quotation marks omitted)); *State v. Simon*, 247 P.2d 481, 485 (Mont. 1952) ("[I]t is immaterial whether the proof shows that the accused actually was the perpetrator of the offense or whether he aided and abetted. In either case he is a principal and may be tried and convicted as such."); *State v. McClain*, 246 P. 956, 958-59 (Mont. 1926) ("Our law provides that he who . . . aids, assists, advises, or encourages shall be considered a principal, and shall be punished accordingly." (internal quotation marks omitted)); *State v. Gleim*, 41 P. 998, 998 (Mont. 1895) ("Any person who stands by, and aids, abets, or assists . . . shall be deemed a principal offender, and shall be punished accordingly." (internal quotation marks omitted)).

**[8]** By "abandon[ing] completely the old common law terminology and simply provid[ing] that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime," section 45-2-302 represents a "much more modern approach to the entire subject of parties to crime." LaFave & Scott, *supra*, § 6.6 & n.99 (citing Mont. Code Ann. § 45-2-302). This mod-

ern approach does not purport, however, to alter the long-standing rule that aiders and abettors are punishable to the same extent as perpetrators. Indeed, the drafter's comment to section 45-2-302 explains that this provision "*accepts the approach of the existing law* and endeavors to develop it in full and systematic fashion." Mont. Code Ann. § 45-2-302 cmt. The imposition of the death penalty in Gollehon's case thus comported with well-settled principles of accomplice liability.

V

The dissent in *Gollehon I* does not compel a contrary conclusion. The three dissenting justices contended that the majority had erroneously focused on "the nature of 'accountability' rather than on Montana's sentencing statutes." *Gollehon I*, 864 P.2d at 270 (Gray, J., dissenting). Because these statutes did not "clearly provide[ ] for the imposition of the death penalty under these circumstances," the dissent argued that the rule of lenity required the application of the default penalty. *Id.*

**[9]** The rule of lenity "is simply a canon of statutory construction." *United States v. LeCoe*, 936 F.2d 398, 402 (9th Cir. 1991). As such, we have no power to apply it because we are bound by the Montana Supreme Court's determination that there is no statutory ambiguity warranting its application. *See Sabetti v. Dipaolo*, 16 F.3d 16, 19 (1st Cir. 1994). Furthermore, even if we could apply it, we could do so only "if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute.' " *Barber v. Thomas*, 130 S. Ct. 2499, 2508 (2010) (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998)). We cannot say, after "seizing every thing from which aid can be derived," that there remains any ambiguity, let alone grievous ambiguity, as to the penalties applicable to aiders and abettors in Montana. *United States v. Nader*, 542 F.3d 713, 721 (9th Cir. 2008) (internal quotation marks omitted).

Gollehon "has not pointed to anything in the federal Constitution—other than, of course, the 'fair notice' guaranty, which, we have just held, is satisfied here—that would *require* a state court to apply the rule of lenity when interpreting a state statute." *Sabetti*, 16 F.3d at 19. Therefore, the dissent in *Gollehon I* is of no assistance to him.

## VI

**[10]** The relevant statutory text, decisional law, and centuries of Anglo-American jurisprudence made it clear at the relevant time that aiding and abetting an offense would subject a person to the same penalty available for that offense, not a separate and lesser penalty. Therefore, the Montana courts' conclusion that deliberate homicide by accountability is a death-eligible offense is far from a "radical and unforeseen departure from former law," but rather, a perfectly logical extension of it. *Webster*, 369 F.3d at 1069 (internal quotation marks omitted).

For the foregoing reasons, the judgment of the district court denying Gollehon's motion for summary judgment and dismissing Gollehon's habeas petition is

**AFFIRMED.**